(No. 4024

JAMES WILSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 18, 1947.*

CASSIDY, SLOAN AND CRUTCHER, for Claimant.

GEORGE F. BARRETT, Attorney General; and C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

ECKERT, C. J.

On June 25th, 1946, the claimant, James Wilson, an employee of the respondent in the Department of Public Welfare, while driving a tractor from the Peoria State Hospital to the gardens of the institution, and while crossing a driveway, was struck by an approaching automobile. Immediately after the accident, he was taken to the Peoria State Hospital where he received medical care for a period of five months. He was then sent to the nurse's home where he remained until January 17,

1947. On April 18, 1947 he resumed his employment at the Peoria State Hospital.

At the time of the accident the employer and employee were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the act. Claimant has one child under sixteen years of age.

Claimant, testifying in his own behalf, stated that he sustained injuries to his back, his pelvis and his jawbone; that the front of his right hip is flat; that he has a protrusion, and also a large lump on his back. He stated that there is stiffness and weakness in his right leg, which tires easily, and that he has a bit of a limp. He testified that as a result of being dragged along the blacktop road he has a scar over the right eye and a scar between the jawbone and the right ear. On cross-examination, claimant testified that there is nothing wrong with his right arm, his right knee, his right ankle, or his right leg, and that his injury is confined to the area surrounding his right hip.

Dr. Fred Stuttle, a witness called on behalf of claimant, testified that he had examined and treated the claimant, and had examined X-ray plates taken of claimant's injuries. He stated that the X-rays and his clinical examination showed a fracture of the right iliac crest; that the last X-rays showed a good union of this fracture in the lumbar sacro region with a narrowness of the disk of the fifth lumbar and sacro. He stated that there is some sclerosis of the bone in this region, and a spasm of the muscles of the low back. Dr. Stuttle testified that the narrowing of the disk was doubtless a condition existing before any injury; that the existence of muscular spasm was an indication of a painful stimulation arising

from this region; and that the narrowing of the disk allows a settling of the joint between the vertebrae in the lumbar sacro region with some arthritis, which he felt was aggravated by the injury.

Dr. Stuttle also testified that the displacement of the illium affects the function of the hip. He stated: ·

"The bone which was displaced has certain muscles attached to it. They all go down the leg and have to do with the function of the hip and somewhat of the knee. The man does show evidence of shortening of this muscle in that he has shortening of the most important muscle, the tensor fascia lata. That is the muscle which is about the size of a hand attaching from the anterior superior spine, which was part of the bone broken off and going from this region to a broad flat band of fascia, which is a thick coating of the outer thigh on the outer side."

Dr. Stuttle also said that he considered claimant's condition to be permanent.

Claimant's annual earnings during the year immediately preceding the injury were $1,422.43, so that his weekly wage was $27.35. Since claimant had one child under sixteen years of age, his compensation rate, under the provisions of the Workmen's Compensation Act, is 55% of this weekly wage, or $15.04. The injury having occurred after July 1, 1945, this must be increased 20%, making his compensation rate the maximum of $18.00 per week.

Claimant was temporarily totally disabled for a period of 42 1/7 weeks. At the compensation rate of $18.00 per week, he would be entitled, for that period, to an award of $758.57. He had, however, already received from the respondent, for unproductive time, the sum of $584.57, so that there is due claimant a balance of $174.00 on account of temporary total disability.

The record fails to sustain any claim for facial disfigurement, for back injury, or for complete or partial permanent disability. It is clear, however, that claimant has sustained a loss of use of his right leg, and that he·

has properly incurred medical expenses in the amount of $37.00. From the testimony, and from the report of Commissioner Jenkins, who observed the claimant, the court finds that claimant has sustained a 15% partial permanent loss of use of his right leg.

The testimony at the hearing was taken and transcribed by Mary I. Reynolds, who has submitted a statement for her services in the amount of $31.50. This statement appears reasonable for the services rendered.

An award in the aggregate amount of $755.50 is therefore entered, payable as follows, to-wit:

To Mary I. Reynolds, for taking and transcribing testimony, $31.50, payable forthwith.

To claimant, on account of temporary total disability, the balance of $174.00, payable forthwith.

To Dr. Fred Stuttle, for medical services, $37.00, payable forthwith.

To claimant, for 15% partial, permanent loss of use of his right leg, being 28½ weeks, at $18.00 per week, $513.00, all of which has accrued, payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."